IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STERLING THOMPSON,

        Plaintiff,

vs.

Case No.07-1034-JTM

MICHAEL J. ASTRUE,
Commissioner of Social Security

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff Sterling Thompson has applied for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. and for supplemental security income (SSI) benefits, based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*. His application was denied initially and on reconsideration. The ALJ denied the application on September 14, 2005; the Appeals Council affirmed on December 5, 2006. Plaintiff makes five allegations of error.

First, that the ALJ failed to conduct a proper credibility inquiry. Second, that the ALJ failed to consider the effect of Thompson's impairments including back pain and shoulder pain. Third, that the ALJ erred in not finding that Thompson met the listed impairment of 1.04A. Fourth, that the ALJ improperly excluded Dr. Hendricks's opinion. Fifth, that Thompson received ineffective assistance at the ALJ hearing from his personal non-attorney representative.

Thompson was born in 1949, and has an eighth grade education. He has operated a restaurant and worked as a meat boner. He claims he became disabled on April 5, 1987, due to carpal tunnel syndrome and injuries to his back, hands, and elbows.

The ALJ agreed that Thompson was severely impaired by traumatic arthritis of the lumbar spine, carpal tunnel syndrome, and ulnar neuropathy (Tr. 27-28), but determined Thompson did not meet any listed impairment. The ALJ also found Thompson's subjective complaints not entirely credible, and that Thompson had the residual functional capacity (RFC) to perform sedentary, "other" work. Specifically, the ALJ found Thompson could

> [lift] up to 10 pounds on an occasional basis, but lift no more than 5 pounds on a frequent basis, [sit] up to 6 hours of an 8-hour day, and stand and/or [walk] up to 2 hours of an 8-hour day. The claimant required the option to alternate sitting and standing at 20 minute intervals. He was required to avoid repetitive use of his arms and more than occasional bending, stooping, squatting, and kneeling.

(Tr. 29). The ALJ noted that many of the alleged impairments Thompson cited (vision problems, knee pain, shoulder pain) did not manifest themselves until well after December 31, 1992, the last date he was insured. The ALJ concluded that Thompson could perform sedentary work, adjusting his position as necessary.

The facts are set forth separately and in detail in the ALJ's opinion (R. 23-35), are additionally reviewed in Thompson's brief (Dkt. No. 19, at 2-13), and mentioned *seriatim* in the argument portion of the Commissioner's brief. (Dkt. No. 16 at 4-16).

Appellant Thompson first argues that the ALJ erred in determining that his complaints of pain and impairment were not fully credible. In assessing a claimant's credibility, the ALJ may look to

> the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Social Sec: Ruling 96-7p. *See Luna v. Bowen*, 834 F.2d 161, 164 (10th Cir. 1987).

The court finds that the ALJ properly assessed Thompson's credibility. The ALJ noted that Thompson was able to work long hours and perform heavy lifting in connection with his restaurant business. (Tr. 30). He recently stated that he did not work long hours at the restaurant; during proceedings relating to an earlier application for benefits, he stated that he did work long hours at the business. Thompson testified that he had been told he needed back surgery, but the medical records consistently showed that Thompson's doctors did not believe surgery was indicated in the absence of neurological deficits. (Id.). The ALJ noted that Thompson owned and maintained rental properties. (Tr. 31). Thompson denied using drugs or alcohol. In fact, during his attendance at two substance abuse programs, he acknowledged that he had both sold and used cocaine. The ALJ stressed that the credibility determination was not restricted solely to Thompson's daily activities, but arose from a consideration of the entire record. (Tr. 31). The court finds no error.

Thompson argues that the ALJ's opinion is contrary to Social Security Ruling 96-8p, which provides for consideration of nonsevere impairments. He argues that his "severe physical

3

impairments in the form of chronic back, hand and shoulder pain, as well as testicular pain, and the realistic presentation of this ongoing condition and related impairments in the presentation and discussion of the residual functional capacity assessment as provided by the ALJ is simply illusive." (Dkt. No. 19 at 21).

    SSR 96-8p provides:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work.

    Here, the ALJ found that through the end of 1992 Thompson had severe impairments of traumatic arthritis of the lumbar spine, carpal tunnel syndrome, and ulnar neuropathy. The ALJ appropriately included consideration of all of the impairments for which there was medical evidence at the time Thompson last was insured. The ALJ extensively discussed Thompson's medical history. (Tr. 23-27). With respect to additional impairments such as depression, visual problems, and knee, shoulder and testicular pain, the ALJ discussed each impairment. (Tr. 28). With particular attention to the claim of testicular pain, the ALJ noted that the claim was not severe, and that Thompson only sought treatment for the condition some five years after the termination of his insured status. (Id.) The ALJ noted with respect to the shoulder impairment that all of the medical examinations prior to December 31, 1992 "documented only mild findings in all areas except for moderate right elbow ulnar nerve compression." (Tr. 29-30). In 1987, Thompson had full dexterity, a 35 pound grip strength in his right hand and a 65 pound grip strength in his left. No treating source had concluded

that Thompson was disabled before December 31, 1992.

The RFC the ALJ adopted is completely consistent with Thompson's statement of his medical condition in June of 1992 that he could sit or stand for 20 minutes, and lift up to 20 pounds occasionally. The ALJ's determination of Thompson's RFC "incorporates all of the claimant's limitations that the undersigned has determined to be credible and which are related to all of the claimant's medically determinable impairments, *even those that are determined to be nonsevere*." (Tr. at 31-32) (emphasis added). The court finds that the ALJ's determination did not violate SSR 96-8p.

Next, Thompson argues that the ALJ erred not only in failing to give controlling weight to Dr. Hendricks's opinion, but in ignoring evidence from this source. (Dkt. No. 19, at 22). Specifically, Thompson stresses the statement made by Dr. Hendricks in his treatment notes indicating that he did not believe Thompson would be able to "return to gainful employment" whether or not he had back surgery. (Tr. 114).

This aspect of Dr. Hendicks's opinion is not clear cut. On February 4, 1987, Dr. Hendricks wrote that Thompson "has a bulging disc at L4-5 more focal on the right side with some nerve root pressure," and Dr. Hendricks was "sure [Thompson] is having some discomfort." However, he did not believe that back surgery would help. First, Dr. Hendricks noted that Thompson had suffered a workers compensation injury and that "he said he really isn't able to do his job." Dr. Henricks suggested surgery to relieve the ulnar pressure, but Thompson "is not terribly interested in this."

Later, on March 3, 1987, Dr. Hendricks wrote that Thompson's "MRI does show a mildly ruptured disc with nerve root impingement." (Tr. 113). At that time, Dr. Hendricks did not believe that Thompson would be unable to perform *any* work. He wrote that Thompson needed some surgery

5

to assist with his hands "so that he's able to return to work," even though "he probably won't be able to return to the same type of duty." (Id.). In April of 1987, Dr. Hendricks recommended that Thompson continue to do light duty work.

In short, the ALJ did not ignore the opinion of a treating physician, but accurately and appropriately placed Dr. Hendricks's opinions in the context of the entire medical record. Indeed, it is clear from the ALJ's opinion that he actually credited Thompson with *more* limitations than were imposed by Dr. Hendricks. The ALJ wrote: "Although this [1987 opinion by Dr. Hendricks] was well supported at that time, later evidence documenting ongoing pain and evidence of muscle spasm in June, 1992 shows that the claimant was more limited than reflected by this assessment." (Tr. 32). The court finds no error.

Thompson next argues that the ALJ erred in failing to find that he met Listed Impairment 1.04A for a spinal disorder. In support of his argument, he cites reports by both Drs. Hendricks and Marsh noting mildly ruptured or bulging discs. The court finds no error. The ALJ noted: "There is no evidence of arachnoiditis or stenosis. The claimant did not have the motor or sensory deficits, positive straight leg raising, or atrophy required by medical listing 1.04 for spinal disorders through December 31, 1992." (Tr. 28). Substantial evidence supports this conclusion, and the citations Thompson notes do not alter it. Listing 1.04A requires specific deteriorations which are simply not presented in the medical record:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated

6

> muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)....
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1 (2007).

Here, the record does not reveal the presence of nerve root compression and sensory or reflex loss. Rather, it simply reveals some evidence of mild disc bulging. Dr. Winston's examination in June of 2002 noted that X-rays of Thompson show unremarkable results. (Tr. 557). No evidence in the record supports the specific requirements set forth in Listing 1.04A.

Finally, Thompson complains of the quality of representation he received at the ALJ hearing and during the initial stages of the present action. Bobbette Longstreet, a personal friend of Thompson, assisted him before the ALJ. While "[a]dmittedly, it was Mr. Sterling's [sic] choice that he be represented by Ms. Longstreet," the Brief for the Appellant stresses various errors made by Longstreet in the advice she gave Thompson, including her decision to testify at the hearing. (Dkt. No. 19, at 25). The argument does not support any finding of error by the ALJ. In any event, even ineffective assistance of *counsel* is not cognizable in a civil action for judicial review under the

Social Security Act of the adverse decision of an ALJ. *See Cornett v. Astrue*, 261 Fed.Appx. 644 (5th Cir. 2008); *Russell o/b/o Russell v. Chater*, Case No. 94-2971, 1995 WL 472681 (8th Cir. 1995).

IT IS ACCORDINGLY ORDERED this 22nd day of July, 2008, that the present Appeal is hereby denied.

s/ J. Thomas Marten  
J. THOMAS MARTEN, JUDGE